# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## GARDNER EXTRACT COMPANY, INC. v. D. H. NEVSHEHIR.

### November 16, 1922.

1. BROKERS—*When Broker Entitled to Commissions—Contract that no Commissions Due Unless Goods Delivered and Paid for—Conclusiveness of Verdict of Jury—Case at Bar.*—In the instant case, plaintiff sold for defendant 6,000 casks of chestnut wood extract. Plaintiff claimed that he was to receive five per cent. commissions as brokerage for making the sale, without qualification. On the other hand, the evidence introduced by defendant showed that the contract with plaintiff was made with the distinct understanding that no commissions were to be paid to plaintiff unless such extract was delivered and paid for. Owing to exorbitant freight charges and shipping difficulties due to the war, defendant and the vendees agreed to a cancellation of the contract as to part of the extract. A letter from defendant to the vendees proposing this cancellation contained the following words: "We presume *we* would be able to take care of" plaintiff. Defendant claimed that this was a stenographer's mistake and should have read, "we presume *you* would be able to take care of" plaintiff. The jury found a verdict in favor of defendant, which the trial court set aside as contrary to the evidence. The contract was profitable to defendant and its cancellation entailed loss.

   *Held:* That the controlling questions of fact were peculiarly within the province of the jury, and that their verdict was amply supported by the evidence for defendant, and that the court erred in setting it aside.

2. NEW TRIALS—*Verdict Contrary to the Evidence or Without Evidence to Support it—Conclusiveness of Verdict.*—Where the evidence shows that a case is a proper one for submission to a jury, by statute in Virginia, their verdict is conclusive unless it appears that it is plainly wrong or without evidence to support it.

Error to a judgment of the Circuit Court of Augusta county in an action of assumpsit. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Rudolph Bumgardner* and *Curry & Curry*, for the plaintiff in error.

*Joseph A. Glasgow* and *Wm. A. Pratt*, for the defendant in error.

Prentis, J., delivered the opinion of the court.

[1] The Gardner Extract Company, Inc., hereafter called the vendor, entered into a contract in writing with Humphreys, Percival, Ellis & Co., hereafter called the vendees, under which the vendor sold 6,000 casks of chestnut wood extract, f. o. b. steamer New York. The sales contract was negotiated with Nevshehir, hereafter called the plaintiff, and he was to receive five per cent. commissions as brokerage for making the sale, without qualification, according to his testimony. On the other hand, the evidence introduced by the vendor shows that the contract with the plaintiff was made with W. H. Gardner, the president of the vendor company, with the distinct understanding between himself and the plaintiff that no commissions were to be paid to the plaintiff unless such extract was delivered and paid for. This statement of the witness, Gardner, was many times in substance repeated during his examination. As indicating the character of his evidence upon this point, we will quote one of his answers in response to a request to state what were the full terms of the agreement between himself and the plaintiff. It follows:

"I received a letter from Mr. Nevshehir, relative to selling him some extract. He said he came over here, representing some of the largest English tanners, so I

wrote to Mr. Nevshehir that I would be in Boston the following week, and I would stop off and see him in New York. So I stopped off in New York and saw him, and he there represented to me that he came over here, representing some large English tanners, to buy extract for them, and wanted to know what I could furnish them. So I agreed with Mr. Nevshehir that he might place some extract for me. Then he wanted to agree to a contract. He wanted to make a contract with me to represent our company for the English market. Well, when I saw the man, I decided that I wouldn't go into any contract with him. I didn't know him, and I told him, I says the Gardner Extract Company people are responsible people, and any contract they go into can be enforced, but I know nothing about you, consequently I don't know whether we can execute a contract or not, but we are willing to allow you to place 6,000 barrels for us, during 1916, shipments to begin in January, at the rate of 500 barrels per month. Then the question came up about commissions, and I agreed to allow Mr. Nevshehir five per cent. commission on all extract sold, delivered and paid for. Now it was expressly understood by Nevshehir that we would pay no commission—and I told him very emphatically that we would pay no commission on any extract that was not delivered and paid for. I told him that there was a war on between England and all the other countries, that England was having difficulties, great difficulties, that nobody could tell about shipping during this war period, and that my sympathies were with England, with the English in this war, and I made it very emphatic that no commission would be paid except on extract that was delivered, and no matter whose fault it was, or what the reason was, unless the extract was delivered and we received our money, we wouldn't pay one cent commission."

Among the eight grounds of defense specified by the vendor was one reading thus:

"4. The specified commissions of five per cent. on the sale of extract made to Humphreys, Percival, Ellis & Company was only payable out of proceeds of the extract actually accepted and paid for by the buyers."

Notwithstanding this specific challenge, when the plaintiff gave his testimony he made no reference thereto but contented himself with saying, "My remuneration was five per cent. commissions to be paid by the Gardner Extract Company."

To support his recovery, the plaintiff relies chiefly upon a letter from the vendor to the vendees at London, dated Basic City, Va., June 3, 1916 (a copy of which was sent to the plaintiff as was customary with correspondence relating to the contract), which reads thus:

"Messrs. Humphreys, Percival, Ellis & Co.,
    "90 Tooley Street,
        "London, S. E.

"Gentlemen:
    "We have cable from you as follows:
    " 'Since freight so exorbitant and shipping difficult, suggest you sell in America balance our chestnut contract at three and quarter cents per pound. Understand others obtaining three and three quarters. Cable us.'.

    "To which we answered—'Cannot get price named.' We do not know where we could sell this extract at three and a quarter cents in barrels. We think you must be misinformed relative to extract in this country. The price of three and three quarter cents is for chestnut bak oark extract, not for chestnut wood extract.

"Several days ago we notified your agents in New York that we expected to get off a 1,000 barrels for you some time this month. We do not care to be put to the trouble of reselling and then settling with your company, but, if you desire us to cancel contract, we shall do so as an accommodation. We could probably get one quarter cent more per pound than you are paying us, but the work in connection would consume the difference in price. We would suggest, unless the price materially advances, that you cancel the contract rather than make the resale. Also, there is Nevshehir's interest in the matter which we must take into consideration; however, if you want to cancel the contract, we presume we would be able to take care of Nevshehir.

"Yours truly,
"GARDNER EXTRACT CO.,
"W.H.G.–B.                "W. H. Gardner, Mgr."

And the reply thereto by cablegram, sent June 26 following, which reads thus:

"Referring your letter June third accept your proposal cancel balance contract, 3,975 casks if Cuthbert parcel not shipped will you also cancel. Kindly cable."

The clause in the letter of June 3rd, without which possibly this controversy would never have arisen is the final clause, reading thus: "Also, there is Nevshehir's interest in the matter which we must take into consideration; however, if you want to cancel contract, we presume we would be able to take care of Nevshehir." As to this clause, the witness, Gardner, who dictated the letter, testifies that the last line thereof, instead of reading "we presume we would be able to take care of Nevshehir," should have read "we presume you

would be able to take care of Nevshehir;" that he so dictated the letter, but that through the misunderstanding and mistake of the stenographer the word "we" was substituted for the word "you" which he intended.

A long and acrimonious correspondence followed between the parties which aids little in the determination of their rights. On the 28th of June, Gardner, representing the Gardner Extract Co., having discovered his alleged mistake, sent this cablegram to the vendees: "Shipment aboard *Carpathia*. Will cancel balance of contract with understanding that you make it satisfactory to Nevshehir." On the same day the vendees acknowledged the receipt of that cable and said in addition: "Our principal happens to be away until Monday next and we prefer to place the matter before him for decision, and consequently we ask you to be kind enough to allow the matter to remain open until Monday next when we shall cable you what we have decided to do. Hoping this will be satisfactory to you," etc.

It is, we think, apparent from the entire record that the true, indeed, impelling reason for the mutual cancellation of the contract was the state of war then existing and the consequential impossibility of securing ships except at prohibitory rates and at great risk of loss because of the threatened casualties of war. That this possible interference with the performance of the contract was contemplated by the vendor is indicated by his evidence as to the true nature of his contract with the plaintiff, and in determining the truth or falsity of his statements, the jury might very well, under the circumstances, have regarded them as true because probable under existing conditions.

The jury found a verdict in favor of the vendor, defendant, having been instructed by the learned judge of the trial court as follows:

"The court instructs the jury that the burden is on the plaintiff to prove his case by a preponderance of the evidence.

"1. If the jury believe that the defendant contracted to pay to the plaintiff commissions on a sale of extract made through him, and that a sale was made through him, and if the jury further believe that a portion of the extract so sold was not delivered, but that the sale was cancelled at the instance of the defendant, the defendant is still liable therefor.

"2. Unless the jury further believe that when the contract of sale was made it was understood and agreed upon between the plaintiff and the defendant that the plaintiff was to be paid his commission out of the net proceeds of sale and not otherwise; that is to say, that the contract made between these parties in terms provided that the plaintiff should not be paid any commission under it if the sale fell through, regardless of the fact as to whether it fell through because of the conduct either of the vendor or the vendee.

"In the circumstances first above stated, the plaintiff is entitled to recover.

"If the facts are as stated in the second instance, then he is not.

"And the court proceeding to construe the letter of June 3, 1916, and the cablegram of June 26, 1916, tells the jury that they in legal effect cancelled the contract to deliver all extract not yet shipped. And the court further tells the jury that even though they should believe the letter of June 3rd contained errors prejudicial to the defendant, they cannot consider them as affecting the rights of the parties as of the date of the cancellation, June 26, 1916. And the court further tells the jury that the willingness of the defendant to deliver the extract after June 26, 1916, does not affect the rights of the parties."

The learned trial judge set aside this verdict because of opinion that it was contrary to the evidence and without supporting evidence, and entered judgment for the plaintiff for the entire amount of the commissions claimed on that portion of the extract which by mutual consent of the vendor and the vendees had never been shipped. In his opinion he emphasizes the fact that the correspondence shows a keen interest on the part of the vendor in Nevshehir and his commissions, and apparently concludes therefrom that Gardner's testimony as to the true nature of the vendor's contract with the plaintiff is incredible. As to this we are unable to agree with him. Ordinary business courtesy would have made honest men, under such circumstances, anxious to protect the plaintiff as far as possible without waiving their own rights. After the alleged mistake in the letter of June 3rd, no other reason than its existence is necessary to account for Gardner's interest in the matter and his anxiety to make some proper settlement with Nevshehir by the vendees a condition precedent to the cancellation. The contract was profitable to the vendor, its cancellation entailed loss, and the undelivered part of the extract was never manufactured. One reason for this was the vendor's inability to find another purchaser because tanners who use the product generally make yearly contracts for their supply.

[2] Whatever differences of opinion may fairly exist as to some of the questions raised, we are clear in our view that the controlling questions of fact here involved were peculiarly within the province of the jury; that their verdict is amply supported by the evidence of Gardner, which, as to the specific nature of the vendor's contract with the plaintiff, is uncontroverted. It is unnecessary to cite precedents showing the effect which courts should accord to the verdicts of juries, in cases

where reasonable men may fairly differ as to proper conclusions, because the matter is now regulated in this State by statute and where the evidence shows that the case is a proper one for submission to a jury, their verdict is conclusive unless it appears that it "is plainly wrong or without evidence to support it." Here, as we have concluded, the verdict is supported by the evidence, and this court will enter judgment in favor of the vendor, the defendant, in accordance therewith.

*Reversed.*