# Richmond.

## Stella H. Ellison v. Hampton and Langley Field Railway Company.

March 13, 1930.

Absent, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Lett & Ford*, for the plaintiff in error.

*John Weymouth*, for the defendant in error.

PRENTIS, C. J., delivered the opinion of the court.

This is an action for personal injury in which there was a verdict for $7,500.00 in favor of the plaintiff, Stella H. Ellison, which the trial court set aside and then entered judgment in favor of the defendant company.

The only assignment of error is that the trial court erred in setting aside the verdict of the jury, and that instead of so doing it should have entered judgment for the plaintiff upon the verdict.

The plaintiff's negligence is apparent, and the only question at issue is whether or not she is entitled to recover under the last clear chance or discovered peril doctrine.

The rules of law applicable to such cases have been frequently stated, and it is doubtful whether any additional statement will clarify them. The difficulty in most cases, and in this case the quite serious difficulty, is to apply the unquestioned rules of law to the peculiar facts shown by the record.

This is a general statement of these facts from the plaintiff's viewpoint: The company's railway line runs from Hampton to Langley Field, in the county of Elizabeth City. At the place of the accident the defendant company owns its right of way, which adjoins the public highway. This highway has a concrete driveway between which and the car tracks at this point the intervening space is level and about

thirty feet wide. There was no fence or other obstruction there. The plaintiff had gone to the house of Mr. Girard Chambers, on the south side of the track, and the company's right of way and tracks were between his lot and the highway. This lot fronts about 135 feet, and the residence is back about 120 feet from the railway track. There was a walkway for pedestrians leading from the residence which extended to within a few feet of the railway track, then there was a break in it across the track, and then the walkway continued towards the highway. The plaintiff was fifty-four years of age and very deaf. She had gone with her daughter, Mrs. Evans, to the Chambers' home in an automobile, April 14, 1927. The automobile was parked on the space between the concrete highway and the street car track towards Langley Field, a few feet from the gateway. The gateway from the Chambers' home was marked by brick columns, and on the Hampton side there was a tree or shrub which partly cut off the view of the street car track towards Hampton. These columns and shrub obstructed the view until one coming out of the Chambers' lot was something over eleven feet from the track. Leaving the Chambers' home, passing through the gateway, on the walkway, the plaintiff turned to her right and advanced diagonally across the track in the direction of the automobile which was there parked. She crossed the nearest rail to her and proceeded diagonally across the track and had reached the farthest rail, and was in the act of stepping over it, when the street car struck her from behind on her left side, knocking her down and cutting off most of one of her feet, causing the injury of which she complains.

The precise point upon the track where her foot was

so crushed under the wheel seems to be sufficiently identified as being twenty-eight feet distant, eastwardly, along the rail from the center line of the pathway leading from the Chambers' gateway. The distance between the rails is four feet, eight and one-half inches. Therefore, as the plaintiff walked diagonally, with her back towards Hampton and the approaching car, she must have walked more than twenty-five feet to the point at which she was injured. It is shown by the testimony of the motorman that she was not thrown forward, but fell away from the track at the point where she was struck by the left side corner of the street car.

At the time of the occurrence, a United States Army truck, also going to Langley Field, was traveling along the concrete highway in the same direction. This truck was occupied by three soldiers on the front seat and two on the rear. Two of these testified. Sometimes the car would be ahead of the truck, and when the car stopped the truck would overtake and pass it. The driver of the truck testified that he saw the plaintiff when she approached the street car track from the right, called the attention of the others by him on the seat to her and that she was going to be struck by the street car then advancing upon her, and he shouted when he appreciated the danger, hoping to warn either the motorman or the plaintiff, but neither heard him. He also testified that the motorman at this critical period was not observing the track in front of him, but was looking over toward a field to the right, seeming to be heedless of the danger of the plaintiff.

From the viewpoint of the defendant, all of the testimony which tends to show the negligence of the motorman is contradicted. The motorman, in substance, testified that before he saw or could see the

plaintiff approaching the track, he was within eighty or 100 feet of the place of the collision; that he was vigilant and keeping a proper lookout; and that as soon as he perceived that the plaintiff was about to cross the track and was heedless of her danger, he sounded the alarm and reversed his car, and that at the speed at which he was going, from twenty to twenty-two miles an hour, it was absolutely impossible for him to stop the car any sooner than it was stopped. This evidence is to some extent corroborated by three of the passengers on the car, though they were not observing either the plaintiff or the motorman so closely as to be able to corroborate all of the positive statements of the motorman.

Certainly then it is a case in which no demurrer to the plaintiff's evidence could have been properly sustained. It is also true that no motion to strike out the evidence introduced by the plaintiff could have been sustained. Manifestly it was a case for submission to the jury upon the clearly established fact that the plaintiff was grossly negligent and that she could only recover if the motorman, in the exercise of ordinary care under the circumstances, could and should have saved her from injury. Nearly all of the instructions properly and carefully directed the attention of the jury to this question as the only substantial question in the case. The jury having decided this issue in favor of the plaintiff, our problem is to determine whether the trial court was justified in setting aside the verdict.

This expression by Burks, J., in *Forbes & Co.* v. *Southern Cotton Oil Co.*, 130 Va. 259, 108 S. E. 15, 19, has been frequently quoted with approval: "It is not sufficient that the judge, if on the jury, would have rendered a different verdict. It is not sufficient

that there is a great preponderance of the evidence against it. If there is conflict of testimony on a material point, or if reasonably fair minded men may differ as to the conclusions of fact to be drawn from the evidence, or if the conclusion is dependent upon the weight to be given the testimony, in all such cases the verdict of the jury is final and conclusive and cannot be disturbed either by the trial court or by this court, or if improperly set aside by the trial court, it will be reinstated by this court. But with all the respect that is justly due to the verdict of a jury, and which is freely accorded to it, if there has been 'a plain deviation from right and justice' even a court of law will not make itself a party to such a wrong by entering up judgment on it. The initial step of the trial court, that of setting aside the verdict, can only be taken either where there is no evidence at all to support the verdict, or else the verdict is *plainly* contrary to the evidence and does not come within the rule above stated. This initial step must be taken, under the conditions stated, before the trial court can enter such judgment as to it shall seem right and proper." *Gardner Extract Co., Inc.*, v. *Nevshehir*, 134 Va. 402, 114 S. E. 725; *Gregory* v. *Seaboard Air Line Ry. Co.*, 142 Va. 750, 128 S. E. 272; *Rauch & Co.* v. *Graham, etc., Co.*, 145 Va. 691, 134 S. E. 692; *Bernstein* v. *Bord*, 146 Va. 679, 132 S. E. 698; *Peninsula Produce Exchange* v. *Upshur*, 149 Va. 643, 140 S. E. 651.

*Ashby* v. *Virginia Ry. & Power Co.*, 138 Va. 310, 122 S. E. 104, is relied upon by the company here as quite like the case at bar. So it is, for there the plaintiff was an old lady, with her head covered with a white shawl, crossing the street with her head bent downward and looking neither to the right nor to the left as she approached the track, and she was not allowed to recover. There, however, practically the

same question was submitted to a jury, and the verdict of the jury was in favor of the defendant company. The trial court refused to set the verdict aside and this court affirmed the judgment in favor of the defendant. So it can hardly be doubted that had the jury in this case found a verdict in favor of the defendant, that verdict would not have been disturbed here.

In this case there are certain physical facts which certainly tend strongly to support the conclusion of the jury. After the plaintiff emerged from behind the obstructions at the gateway, the view was unobstructed for several hundred feet. It is shown that as she walked towards the track and between the rails she appeared to be unconscious of her peril. The physical fact that the spot of blood was found upon the rail, say twenty-eight feet away from the center of the walkway crossing the track, appears to identify the place at which she was struck. It is difficult, if not impossible, to reconcile this with the testimony of the motorman, for if he is right in saying that he did not see her and that she did not emerge from behind the obstruction until he was eighty to 100 feet away from her and while she was walking slowly and he was going at twenty-two miles an hour, it would be impossible for her to have walked that distance while the car was only traveling from eighty to 100 feet. This physical fact, the spot on the rail, goes far to support other testimony in the case that the plaintiff emerged into view when the car was two or three hundred feet away, and that when two or three hundred feet away the motorman sounded a signal of alarm. It seems far more probable that he mistakenly concluded that she would take care of herself, and if it be true, as one of the witnesses said, that in the interval he looked away from the track, or if he thereafter failed to see

what other witnesses saw until it was too late to avoid the catastrophe, this is sufficient to support the verdict of the jury, that the motorman should have discovered her peril and had the last clear chance to save her. We cannot agree with the learned trial court judge, that the verdict of the jury was without supporting evidence.

This case may be compared with *Shoemaker* v. *Andrews*, *post*, page 170, 152 S. E. 370, this day decided, in which the procedure was similar, but the judgment of the trial court in favor of the defendant, notwithstanding the verdict, was affirmed. There the physical facts discredited the verdict, while here they sustain it.

For the reasons which we have indicated, we shall enter judgment here upon the verdict in favor of the plaintiff.

*Reversed.*