# Richmond

## John Edward Bayne v. Albert C. Tharpe

January 18, 1960.

Record No. 5003.

Present, All the Justices.

The opinion states the case.

*Frank D. Harris* (*Hodges & Harris*, on brief), for the plaintiff in error.

*Frank C. Maloney, III* and *Wilbur C. Allen* (*Reginald Pettus; Allen, Allen, Allen & Allen,* on brief), for the defendant in error.

MILLER, J., delivered the opinion of the court.

■ John Edward Bayne, while operating his automobile on State route 40, struck a mule that Albert C. Tharpe was leading along the highway, and Tharpe was injured when the mule fell upon him.

The action for damages for personal injuries instituted by Tharpe against Bayne resulted in a verdict for $11,500, and from the judgment confirming that award, we granted Bayne an appeal.

The accident occurred on March 29, 1958, about 9:30 in the morning as Tharpe was leading the mule in a westerly direction along the highway where it passes through the town of Charlotte Court House, Virginia.

In the area of the mishap the highway is hard-surfaced, twenty feet wide, and divided by white lines into eastbound and westbound traffic lanes, each ten feet wide. On the right of the westbound lane a dirt shoulder two and a half feet wide dips down to a ditch; next to the eastbound lane there is also a shoulder which slants down to a shallow ditch. Beyond this latter ditch there is a sidewalk for pedestrians, but along the roadway edge of the sidewalk, electric poles are interspersed at regular intervals. Farther down the highway the shoulder on that side of the road narrows considerably and is not as wide as the shoulder adjoining the westbound lane. Eastwardly from the point of impact the road is straight, but westwardly therefrom it curves gently to the left.

Tharpe was walking on the dirt shoulder of the westbound lane leading the mule which was walking on the hard surface close to its right edge. He testified that the shoulder was relatively narrow in that area and there was not enough room on the shoulder for both him and the mule. The only harness on the mule was its bridle, and Tharpe was leading the animal by holding to the bridle rein with his left hand. When he saw a car approaching in the eastbound lane, he caught "the mule by the bit" to pull him "over to the shoulder" as close to him as he could. Tharpe was not then aware of Bayne's approaching car but as the eastbound car passed, he "heard the brakes cry on the car behind" him. As he turned, Bayne's car struck the mule, which was still on the hard surface near its edge, and caused the animal to fall upon him.

In describing how the accident occurred, Bayne said that as he traveled westwardly about 35 miles an hour, the speed limit in the area, he saw Tharpe and the mule when about 900 feet away but did not realize that the mule was being led on the edge of the hard surface until he was at the top of a slight rise east of the point of impact. Though he first saw the man and animal when 900 feet from them, this slight rise prevented him from seeing the lower parts of their bodies until he reached the crest of the elevation, which is 105 feet from where the mule was struck. About the time he reached the crest of this elevation, he observed the eastbound car coming around the curve and "slammed on his brakes and tried to stop," but his car struck the mule's left hind leg. The investigating officer testified that the car left skid marks 50 feet in length before it hit the mule.

· Mrs. Julian Vassar, driver of the eastbound car, testified that her vehicle was "pretty close" to Tharpe when she saw Bayne's automobile come over the hill. She said that she realized the danger of the situation for the oncoming vehicle could not enter into her lane without hitting her car. When she first saw Bayne, his head was turned away from the road toward a passenger in his car; she then observed Bayne turn around, and at that time he applied his brakes. She did not see the actual impact as her car had just passed Tharpe when the collision occurred.

We need not analyze or dwell upon the evidence relied upon to prove that Bayne was negligent and that his negligence was a proximate cause of the collision. Suffice it to say that although Bayne saw the mule and Tharpe on the highway 900 feet ahead of him, yet he proceeded to drive at such a speed and in such a manner as to be unable to stop or control his vehicle when he observed a car approaching from the opposite direction in its proper lane of travel and thus struck the mule while the animal was on the extreme right side of the hard surface. A finding that Bayne was negligent and that his negligence was a proximate cause of the mishap was fully justified.

Bayne insists that Tharpe violated § 46-183, Code 1950,[1] by walking on the right shoulder and leading the mule along the edge of the hard surface and was thus guilty of negligence as a matter of law and that the evidence was sufficient to show that this negligence contributed to the mishap.

---

[1] Section 46-183 was amended by Acts 1958, ch. 541, p. 725, and now appears as § 46.1-171, Replacement Vol. 7, Code 1950.

Section 46-183 reads:

"Every person riding a bicycle or an animal upon a roadway and every person driving any animal shall be subject to the provisions of this chapter applicable to the driver of a vehicle, except those provisions which by their very nature can have no application."

Bayne concedes that under § 46-247, Code 1950, as amended by Acts 1950, ch. 433, p. 850,[2] had Tharpe been walking alone, he would have been complying with the statute by walking along the right shoulder for that section permits a pedestrian under like circumstances to walk on either shoulder if it be of sufficient width. Yet as Tharpe was *leading* the mule along the edge of the hard surface, Bayne asserts that in proceeding westwardly, he should have been walking along the shoulder of the eastbound traffic lane so that he would have been facing vehicular traffic traveling eastwardly. He says that "Tharpe and the mule he was leading was a pedestrian under the law," and challenges the correctness of instruction No. 1 which told the jury Tharpe was walking where he had a right to be. He contends that instruction E offered by him should have been given and instruction No. 1 offered by Tharpe should have been refused. The two instructions follow:

"Instruction E:

"The Court instructs the Jury that at the time of the accident in question the plaintiff Albert Tharpe and the mule he was leading, was a pedestrian under our law.

"In this connection, you are instructed that a pedestrian is required to obey the following laws:

"1. To use the sidewalk if one is available that is reasonable suitable and passable for his use;

"2. If no such sidewalk is available, a pedestrian must keep as near as reasonable possible to the extreme left side or edge of the highway or street, or to walk and lead the mule on either shoulder thereof, if they are suitable for such use.

"You are further instructed that if the plaintiff, Albert Tharpe, was not walking according to the above requirements he is negligent as a matter of law, and if the jury believe that his negligence efficiently caused or contributed to cause the collision in question and the injuries complained of, they should find a verdict for the defendant, John Edward Bayne."

---

[2] This section was slightly amended by Acts 1958, ch. 541, p. 740, and now appears as § 46.1-234, Replacement Vol. 7, Code 1950.

"Instruction No. 1:

"The Court instructs the jury that the plaintiff, Tharpe, while proceeding along the highway leading his mule, had equal rights with the defendant in his automobile, and if the jury shall believe from the evidence that the plaintiff was proceeding on his right side of the highway on the shoulder thereof and the mule on the hard surface, he was proceeding where he had a right to proceed with his mule. And, it was the duty of the defendant to exercise reasonable care to avoid overtaking and striking the plaintiff and his mule; and if the jury shall believe from the evidence that the defendant failed to perform this duty, then the defendant was negligen*ct*, and if the jury shall further believe that such negligence was the proximate cause of the plaintiff's injury, then the jury must find for the plaintiff and assess his damages in accordance with the instructions on damages."

We cannot agree with Bayne's contention that a man leading a mule—the two together—constitutes a pedestrian within the meaning of § 46-247 and that their use of and movement along sidewalks, streets and highways were required to conform to the provisions of that section. Section 46-247 was intended to be applicable to a pedestrian's use of the sidewalks, streets and highways, but it is not applicable to nor does it control the manner and circumstances under which these ways shall be used by a person leading a mule.

In *Lawson* v. *Fordyce*, 237 Iowa 28, 21 N. W. 2d 69, the court was called upon to construe and apply statutes similar to § 46-247 and § 46-183. In that case plaintiff was leading a cow in the right driving lane of the road when defendant's automobile approached from the rear and without having sounded a horn, passed on the left side, startled the cow and caused it to run over plaintiff and injure him. In passing upon the trial court's refusal to instruct the jury that a person leading a cow was a pedestrian required by the statute to walk along the left-hand side of the road, the court commented upon similar statutes in other states, including that then in effect in Virginia, and said:

"The statutory provisions above noted permitting pedestrians to walk upon the highways commonly used for vehicular traffic only in the absence of paralleling sidewalks seem to this court to have a very definite connotation and significance. The purpose and intention implicit in such provisions is that the 'pedestrians' who may walk upon the highways are those 'pedestrians' and those only, who are

permitted to walk upon sidewalks. Necessarily the 'pedestrians' required by the statute to walk on the left side of the highway do not include persons afoot who are leading, or are otherwise in charge of, cows, horses, et al., for such persons with their charges are not permitted on sidewalks." (At page 57.)

In the course of the opinion it is also said:

"* * * an unencumbered walker might escape by jumping to his left, but a person leading a cow or other domestic animal, or driving one, or driving a harnessed but unhitched horse or team, would very likely be unsuccessful in getting the frightened animal or animals to jump with him. The result would probably be a catastrophe for all concerned. We doubt very much that the legislatures of the states mentioned intended such statutory provisions to apply to persons on foot in charge of horses, cows, and other livestock herein mentioned, upon the highways." (At page 55.)

It is to be noted that in the *Lawson* case, the plaintiff was leading a cow, often a docile animal; but here Tharpe was leading a mule, and it is generally believed that the latter animal, though usually familiar with the words "gee", "haw" and "whoa", yet does not always respond promptly and obediently to suggestions or commands.

Tharpe and the mule he was leading were not "a pedestrian" within the meaning and intent of § 46-247, and for that reason instruction E, which told the jury that the two "was a pedestrian" was rightly refused.

■ Did the court err in granting instruction No. 1?

Tharpe insists that the words "every person driving any animal" found in § 46-183 are applicable to and include every person *leading* any animal. He also asserts that if this section be not applicable to a person leading a mule upon a highway, then there is no statute that regulated the movements or directed on which side of the road he should lead the animal and that in the exercise of reasonable care he was authorized to lead the mule along the right side of the highway.

We cannot agree with Tharpe's contention that § 46-183 was applicable. The evidence conclusively shows that Tharpe was leading the animal instead of driving it. Insofar as an animal is concerned, this section by its express terms is only applicable when the animal is being *ridden or driven* upon the roadway.

However, because neither § 46-247 nor § 46-183 is applicable to the facts of this case, that circumstance does not necessarily render instruction No. 1 erroneous. As these sections are inapplicable and

no other provision of the traffic law specifies any particular part or area upon the roadway upon which Tharpe should have walked while leading the mule, he was authorized to lead the animal along the right edge of the highway if he were exercising reasonable care in so doing. Instruction No. 1 does not undertake to grant to Tharpe any preferential statutory rights. It merely tells the jury that he had the right to walk along the shoulder leading the mule on the edge of the hard surface. There being no evidence to show that he was negligent in selecting the right side of the highway upon which to lead the animal or that he was occupying any more of the roadway than was reasonably necessary upon which to lead the mule, the instruction is not objectionable.

We find no error in the record and the judgment is affirmed.

*Affirmed.*