## Richmond

VIRGINIA FARM BUREAU MUTUAL INSURANCE COMPANY
v. NELL S. SIMPKINS, EXECUTRIX, ETC.

January 14, 1977.

Record No. 751439.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Poff, JJ.

*Joseph C. Russell,* for plaintiff in error.

*A. Fleet Dillard (Dillard-Hamilton Associates,* on brief), for defendant in error.

COCHRAN, J., delivered the opinion of the court.

Curnell Lee Johnson, while operating his automobile in a southerly direction on State Route 721, struck and killed Eugene W. Simpkins, who was walking in the same direction to remove from the public highway a calf that had escaped from his

property. In a wrongful death action instituted by the executrix against Johnson, an uninsured motorist, a copy of the motion for judgment was served on Virginia Farm Bureau Mutual Insurance Company, which, pursuant to Code § 38.1-381(e1) (Repl. Vol. 1970), defended the action as the uninsured motorist carrier of Simpkins. A trial by jury resulted in a verdict for the executrix in the sum of $55,500, on which the trial court entered judgment.

On appeal the Company challenges the sufficiency of the evidence and also contends that the jury was not properly instructed. The facts are not disputed.

The accident occurred on May 23, 1973, at approximately 9:00 p.m. near the Marriott School about three-tenths of a mile north of St. Stephen's Church Post Office in King and Queen County. Shortly before the accident Richard Kemp had informed Simpkins that he had observed three of Simpkins's calves loose on Route 721. Simpkins, assisted by Kemp, went after the calves. Accompanied by his wife and two children, Kemp proceeded in his pickup truck in a northerly direction on Route 721 and parked facing north 10 or 12 feet off the eastern side of the road in the northern driveway leading into the Marriott School property. Kemp activated his vehicle's four-way flasher lights. Simpkins, driving behind Kemp, parked his car facing north with its left wheels on the hard surface of Route 721 at the southern driveway of the Marriott School and with its headlights burning on low beam. Upon leaving their vehicles, Kemp and Simpkins got two of the calves back into the Simpkins pasture. The third animal ran south and Simpkins followed it on foot, walking on the hard surface of the highway two or three feet from its western edge, which was about 10 feet east of the boundary fence. The fence extended along a bank about one foot higher than the road.

The two lanes of Route 721 were marked. The surface was blacktop, the road was dry and level, and the weather was clear.

Kemp and his wife saw the lights and heard the noise of Johnson's car approaching from the north. Kemp testified that he got out of the road and called a warning to Simpkins; that he stood on the school property behind his truck and in front of Simpkins's car, about midway between the two driveways, and tried to slow the approaching vehicle by waving his arms; that he could see Simpkins at all times until the Johnson car struck

him; that Simpkins was wearing brown khaki clothes; and that there was no other traffic on the highway. Mrs. Kemp, who corroborated her husband's testimony, also said that she "never saw any taillights come on" the Johnson car until she heard the impact of the collision.

Mrs. Simpkins testified that prior to the accident her husband had been in good health except for his being a little deaf in his right ear, which she thought might be "one reason" why he did not hear the Johnson car approaching.

State Trooper D. M. Smith, the investigating officer, arrived a few minutes after the accident. He testified that Johnson admitted that he saw a pickup truck in the northbound lane and behind the truck a car, both vehicles with lights shining, and that he saw four headlights as he passed the car; that when he got past the truck he saw a man waving his arms and slowed down; and that "he hit the brakes" as soon as he struck Simpkins.

Smith testified that there was an unobstructed view of 700 to 800 feet from a slight curve on the north to the place where the accident occurred. He measured 176 feet from the middle of the northern driveway of the school to the middle of the southern driveway, and 178 feet from the middle of the southern driveway to the place where he found Simpkins lying. He found eight feet of skid marks beginning 108 feet south of the southern driveway. The Johnson car was stopped 36 feet south of Simpkins's body. About 80 feet south of the Johnson car was an opening in the pasture fence. Photographs taken by the trooper, showing the scene of the accident and the Johnson car, were introduced into evidence.

Johnson was not present at the trial. The only witness called for the defendant was Johnson's brother, Harry Johnson, Jr., who testified that he was riding in the car operated by Curnell at the time of the accident; that he saw two sets of headlights shining from the side of the road; and that he did not see Simpkins until the car struck him.

We find no merit in the Company's contention that there was insufficient evidence of primary negligence to submit to the jury. From his statement to the trooper it is apparent that Johnson not only saw the flashing light on Kemp's truck, but also he saw or could have seen this light for a considerable distance as he approached from the north along a straight

stretch of highway. He admitted that, after seeing the lights on Simpkins's car and observing a man standing between the two vehicles and waving his arms, he applied his brakes only when he struck Simpkins. The evidence shows that Johnson covered a distance of approximately 284 feet in moving from Kemp's truck to the beginning of the skid mark made by his car. According to the trooper's testimony, at 45 miles per hour a car could be stopped in about 100 feet or less. There was ample evidence from which a jury could reasonably find primary negligence on Johnson's part in proceeding as he did in the face of the warning signals which he observed. The jury reasonably could have found from the evidence that Johnson was not maintaining a proper lookout or that he did not have his vehicle under proper control.

■ Whether Simpkins was contributorily negligent as a matter of law, as the Company argues, depends upon whether he was a pedestrian within the meaning of Code § 46.1-234 (Repl. Vol. 1972),[1] and thereby required to walk on the left side of the highway.

*Hardiman* v. *Dyson,* 194 Va. 116, 72 S.E.2d 361 (1952), and *Saunders* v. *Temple,* 154 Va. 714, 153 S.E. 691 (1930), relied upon by the Company, are inapposite. In *Hardiman,* plaintiff's decedent while intoxicated was wandering on foot alone at night on an erratic course on the wrong side of a public road when he was struck by a vehicle. In *Saunders,* plaintiff was struck while walking alone on a misty night near the center of a highway. Neither of these injured persons was under any duty or compulsion to be in the highway or to walk along the course which he voluntarily selected. We held that each was in violation of the pedestrian statute as well as the rules of self-preservation and was contributorily negligent as a matter of law.

In *Bayne* v. *Tharpe,* 201 Va. 484, 111 S.E.2d 816 (1960),

---

[1] Code § 46.1-234 (Repl. Vol. 1972) provided as follows:

"**§ 46.1-234. Pedestrians not to use roadway except when necessary; keeping to left; soliciting rides. —** Pedestrians shall not use the roadways or streets, other than the sidewalk thereof, for travel, except when necessary to do so because of the absence of sidewalks, reasonably suitable and passable for their use, in which case, if they walk upon the hard surface, or the main travelled portion of the roadway, they shall keep to the extreme left side or edge thereof, or where the shoulders of the highway are of sufficient width to permit, they may walk on either shoulder thereof.

"Pedestrians shall not stand or stop in any roadway or street for the purpose of soliciting rides."

however, we held that a man walking on the right-hand shoulder of the highway leading a mule along the hard surface was not a pedestrian within the meaning of this statute and was therefore not guilty of contributory negligence as a matter of law when an automobile struck the mule which fell on the man. We expressed doubt that it was the legislative intent that such pedestrian statutes should apply to persons on foot in charge of livestock upon the highway.

The rationale of *Bayne* is applicable in this case. Simpkins did not have unrestricted freedom to choose his course, although he had an affirmative duty to exercise ordinary care to remove his calf from the public highway. Thus, in *Rice* v. *Turner*, 191 Va. 601, 62 S.E.2d 24 (1950), we approved an instruction that it was the duty of the defendant to exercise ordinary care to prevent his cow from running at large beyond the boundaries of his land. Failure to discharge this duty, of course, must be a proximate cause of the injuries for which damages are sought in order to impose liability upon the owner. *Wilkins* v. *Sibley*, 205 Va. 171, 135 S.E.2d 765 (1964). In fulfilling his duty to remove a traffic hazard Simpkins was inhibited by the unpredictable movements of the calf. To force the animal to turn through the nearest opening into the pasture Simpkins must necessarily have attempted to keep the calf moving south as close to the fence as the embankment permitted. So the area available to Simpkins for maneuvering and guiding a calf over which he had no physical control was not extensive. Under these circumstances we hold that Simpkins was not a pedestrian within the meaning of Code § 46.1-234 (Repl. Vol. 1972).

Under our view of Simpkins's status it is unnecessary to determine whether he was driving an animal within the meaning of Code § 46.1-171 (Repl. Vol. 1972), and was thus required to proceed on the right side of the road. It suffices that he was not precluded by statute from walking along the right side of the highway. All questions of primary negligence, contributory negligence, and proximate cause were submitted to the jury for its determination. Under Instructions Nos. 5 [2] and

---

[2] Instruction 5 provided:

"INSTRUCTION NO. 5

"The court instructs the jury that if you believe from the evidence that the plaintiff's decedent Simpkins was afoot and was undertaking to drive his calf from the public road

6,[3] the jury was informed that Simpkins had a right to be on the highway to remove his calf and that if he was exercising ordinary care in removing the animal he would not be contributorily negligent merely from being on the right side of the highway when he was struck. But Instruction D,[4] about which there is no controversy, set forth Simpkins's duty to exercise ordinary care for his own safety, to look and listen for approaching vehicles, and to step into a place of safety if it reasonably appeared that he was in danger of being struck. This instruction directed the jury to find for the defendant if it believed that Simpkins had violated any of his duties and that such violation was a proximate cause of the accident. We conclude that these instructions, when read together, fairly instructed the jury.

■ Under our view of the case the trial court erred in giving

back into his pasture enclosure at the time that he was struck by the automobile driven by the defendant, then the said Simpkins had equal rights with the defendant to be on the right hand side of the highway, and it was the duty of the defendant to exercise reasonable care to avoid striking the decedent Simpkins or his animal."

[3] Instruction 6 provided:

### "INSTRUCTION NO. 6

"The Court instructs the jury that it is the duty of the owners of domestic animals to use reasonable care to prevent their straying upon public highways and that if any such animal does stray upon a public highway it is the duty of the owner of the animal to exercise ordinary care to cause such animal to be removed from the highway so as to avoid injury to other persons lawfully using it.

"So, if you believe from the evidence that the decedent Simpkins was in the act of driving his calf from the public highway at the time he was injured and killed and that in so doing he was exercising ordinary care, he would not be guilty of contributory negligence by reason of the fact that he was on the right side of the highway at the time of the accident."

[4] Instruction D provided:

### "INSTRUCTION NO. D

"It was the duty of the plaintiff's decedent as he walked along the highway to exercise ordinary care for his own safety and protection and to look and listen for approaching vehicles proceeding in dangerous proximity to him and to step his course into a place of safety if it reasonably appeared that he was in danger of being struck.

"And if the jury believe from the evidence that the plaintiff's decedent violated any of the foregoing duties, then he was negligent; and if you further believe from the evidence that any such violation was the sole proximate cause of his being struck, or that it proximately contributed thereto, then you shall return your verdict in favor of the defendant."

Instruction No. E,[5] either as originally tendered or in its amended form. The trial court, by its amendment of the instruction, permitted the jury to except Simpkins from the strictures of the pedestrian statute if he were found to have been on the highway exercising reasonable care in removing his calf. As Simpkins was not a pedestrian within the meaning of the statute, no instruction based upon the statute should have been given. In view of the verdict and judgment, however, the error was harmless.

Accordingly, we hold that there was no reversible error in the judgment order, and it will be affirmed.

*Affirmed.*

---

[5] Instruction No. E provided:

"INSTRUCTION NO. E

"If pedestrians walk upon the hard surface, or the main travelled portion of the roadway, they shall keep to the extreme left side or edge thereof.

"And if the jury believe from the evidence that the plaintiff's decedent at the time he was struck was walking on his right hand side of the hard surface of the road, then he was negligent; and if you further believe from the evidence that any such negligence was the sole proximate cause of his being struck, or if it proximately contributed thereto, then you shall return your verdict in favor of the defendant *unless you believe that the decedent was on the highway, exercising ordinary care in removing the animal therefrom.*" (The italicized language was added by amendment made by the court.)