# Richmond

VERSIE BRAY V. BOSTON LUMBER AND BUILDERS CORPORATION.

January 11, 1934.

Present, All the Justices.

The opinion states the case.

*McKinney & Settle,* for the plaintiff in error.

*Martin & Tuck,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

This action was brought by Versie Bray, who will be referred to as the plaintiff, against the Boston Lumber and Builders Corporation, which will be referred to as the defendant, to recover for personal injuries.

At the trial of the case and at the conclusion of the plaintiff's evidence, the defendant moved to strike out the evidence of the plaintiff on the sole ground that it had been shown by his own evidence that he was guilty of contributory negligence as a matter of law, which barred his recovery. The trial court sustained the motion, struck out the plaintiff's evidence on the ground assigned, and entered judgment for the defendant.

The plaintiff's evidence discloses that he was struck by a piece of green lumber which fell from a passing truck owned and operated by the defendant. The truck was proceeding across a bridge over Hyco river, on a State highway leading to South Boston. The plaintiff was, at the time, standing on the bridge talking to two men, and leaning against the cement balustrade. His injuries were of a serious nature.

It appears that the plaintiff, who lived south of the highway about two hundred feet west of the bridge, left his home on the morning of March 22, 1932, intending to go to South Boston. He went out on the highway and proceeded westerly along the south, or his left-hand, side of

the highway until he reached the bridge. At that point he walked across to the opposite side of the bridge, a few feet from the end, leaned over against the railing and there was talking to two men, who came upon the bridge from the opposite direction. They had been talking about five minutes when the plaintiff saw the truck belonging to the defendant coming down the highway approaching the bridge from the east at a rate of speed estimated by some of the witnesses to be between forty and fifty miles per hour. The grade of the road descends considerably from the east toward the bridge for some distance. The truck was loaded with green lumber. The plaintiff, on the approach of the truck, waived or held up his right hand to the driver in an effort to obtain a ride to South Boston. As the truck reached a point on the bridge near to the point where the plaintiff stood, a board one by eight inches and twelve feet long fell from the truck and the end of the board struck him in the face across the upper part of his nose, and knocked him down, rendering him unconscious for ten or fifteen minutes. He suffered broken bones in his nose and other ill effects from the injury.

In the notice and amended notice of motion for judgment filed by the plaintiff he charges two acts of negligence against the defendant—(1) that the lumber was improperly loaded on the truck, and (2) that the driver of the truck was operating it, at the time, at such a "high, reckless, dangerous, excessive and unlawful rate of speed as to cause or permit a piece of lumber to fall or be thrown therefrom * * *."

It is necessary to analyze the plaintiff's evidence under the familiar rule, which will later be adverted to and which has been established by prior decisions of this court, regarding a review of the trial court's action in striking the plaintiff's evidence. If, under this rule, it appears that there was sufficient evidence to have taken the case to the jury on the question of the defendant's primary negligence, then it becomes necessary to determine

whether or not the plaintiff was guilty of contributory negligence which barred his recovery.

While it is true the sole reason the court gave for striking the plaintiff's evidence was that the plaintiff was barred by his contributory negligence, yet if the court's conclusion results in a correct determination of the case, the fact that its action was based upon an erroneous ground would not justify this court in reversing the ruling of the trial court. In other words, if the plaintiff in fact has proven no primary negligence on the part of the defendant, the fact that the court erroneously assigned the reason for its judgment would not necessarily bind and limit the defendant upon this writ of error to the sole question of the plaintiff's contributory negligence. However, by assigning the sole ground, namely, the plaintiff's contributory negligence, as the basis of the motion and not assigning the insufficiency of the plaintiff's evidence as a ground, it was calculated to mislead him and cause him the loss of certain legal rights in procedure to which he was entitled. For instance, if the defendant had as-signed as one of the grounds of his motion the insufficiency of the evidence, the plaintiff could have taken a non-suit.

Quite recently this court, in *Jones* v. *Hanbury,* 158 Va. 842, 164 S. E. 545, 546, speaking of the motion to strike the plaintiff's evidence when it has been concluded and before the defendant has offered any evidence, said:

"Where material facts and circumstances of a case lie peculiarly within the knowledge of the defendant, or peculiarly within the knowledge of both the plaintiff and the defendant, it is a *very* drastic proceeding to strike out all the plaintiff's evidence on a motion made at the conclusion of the plaintiff's evidence in chief, before the defendant has testified. A motion to strike out made under such circumstances should not be sustained unless it is *very* plain that the court would be compelled to set aside a verdict for the plaintiff upon a consideration of the evidence strictly as upon a demurrer to the evidence, and in

the light of the fact that the defendant has seen fit not to testify and subject himself to cross-examination. Where a motion to strike out is made after all the evidence for both parties has been introduced or upon a motion to set aside a verdict, a somewhat more liberal rule is sometimes applied for the consideration of the evidence in passing upon the motion; but in cases such as this (where the motion to strike out is made at the conclusion of the plaintiff's evidence in chief), the court will rigidly apply the rule applicable to the consideration of evidence upon a demurrer to the evidence."

When we apply the foregoing rule to the evidence in the case at bar it is apparent that there was sufficient evidence of the primary negligence of the defendant to have carried that question to the jury, for when we look to the evidence we find that the truck which was loaded with green lumber was descending a steep hill and approaching the bridge at forty to fifty miles per hour where the plaintiff and two other men were standing, and a piece of the lumber "flew" off and struck the plaintiff. Those facts, which must be taken as established, and the physical surroundings, and all of the just and reasonable inferences that could be drawn from the evidence favorable to the plaintiff, constituted sufficient evidence to have submitted the question to the jury. From the established facts it could reasonably be inferred that the lumber was not securely packed and fastened upon the truck or it could be just as reasonably inferred that the speed of the truck was excessive considering the surroundings at the time. Whether the driver of the truck was negligent in failing to drive it carefully and at a prudent speed not greater nor less than was reasonable and proper with due regard for the conditions then existing and was so driving as not to endanger the life or property of another was, under the facts here, for the jury to determine.

It is contended that the plaintiff was guilty of contributory negligence as a matter of law because he was at the time of the accident violating the statute of Virginia [sec-

tion 2145 (73) (h)], which is here quoted: "Pedestrians shall not use the highways other than the sidewalks thereof, for travel, except when obliged to do so by the absence of sidewalks reasonably suitable and passable for their use, in which case they shall keep as near as reasonably possible to the extreme left side or edge of same." This brings up the question of whether or not the plaintiff was a pedestrian on the highway within the meaning of the statute quoted above and if so, whether or not, as such a pedestrian, his violation of the statute by his position on the bridge at the time of the accident rendered him guilty of contributory negligence as a matter of law, so as to bar any right of recovery.

■ It is not necessary to the decision of this case to determine the status of the plaintiff, that is, whether or not he was a pedestrian at the time the injury was inflicted, because if we assume that he was a pedestrian and at the time violating the statute, that does not affect the ulimate conclusion to be reached, because his violation of the statute, if a pedestrian, was not the cause of the injury. This is but another way of saying that there must be causal connection between the violation of the statute and the injury, otherwise the violation becomes immaterial. It is the well-settled law of this State that unless it is shown that his violation of a statute was the proximate or contributing cause of the injury the plaintiff is not barred from a right to recover. *Kinsey* v. *Brugh,* 157 Va. 407, 161 S. E. 41; *C. & O. Ry. Co.* v. *Barlow,* 155 Va. 863, 156 S. E. 397.

In the case of *Kinsey* v. *Brugh, supra,* where the plaintiff, in violation of the statute, was driving a buggy on the highway after dark without displaying a light and the defendant, driving his car, ran into the rear of the buggy, this court upheld the judgment of the lower court based on the verdict of the jury on the ground that the negligence of the defendant was the proximate cause of the injury, although the failure of the plaintiff to have a light on his buggy was the remote cause.

■ It is said in *Lavenstein* v. *Maile,* 146 Va. 789, 132 S. E. 844, 848: "The established rule is that before an illegal act or omission can be held to be contributory negligence it must appear that there was causal connection between such act or omission and the injury, and the mere collateral wrongdoing of the plaintiff cannot of itself defeat his right to recover where it did not proximately contribute to his injury."

Counsel have cited us to no authority, and we know of none in this State, wherein the doctrine herein enunciated has not been followed.

In the case of *Saunders* v. *Temple,* 154 Va. 714, 153 S. E. 691, cited by the defendant in error, the court said it was apparent from his own testimony that the plaintiff was guilty of contributory negligence. There the defendant was walking near the center line of a concrete roadway which was occupied by moving cars on a dark and misty night without heeding vehicles approaching from behind. The court held from the plaintiff's own testimony and the physical facts that he was guilty of gross negligence as well as having violated the statute with reference to pedestrians on the highway, and the court could not have arrived at any other conclusion from the evidence.

■ Assuming that the plaintiff was guilty of negligence as a result of his position on the bridge at the time of the accident, was his injury in any greater degree the natural consequence of his negligent act than if he had been guilty of no negligence at all? If instead of approaching the bridge from the east, he had made the approach from the west, then his position on the bridge would have violated no statute, and its relation toward approaching traffic from the east would have been exactly as it was. It cannot be said that his negligence was the direct proximate and consequential cause of his injury as a matter of law. It is as possible that this accident would have occurred had he remained on the opposite side of the bridge or road, or if he had been traveling in the opposite direction from which he was traveling.

In view of the foregoing we are of the opinion that the trial court erred in striking the evidence of the plaintiff on the ground that he, by violating the statute of Virginia, was guilty of negligence as a matter of law. We find no causal connection between the violation of the statute, if such is a fact, and the injury of which the plaintiff complains. If he was violating the statute such violation may have been a condition, but it certainly was not the cause of his injury.

The judgment of the trial court is reversed, and the case is remanded for a new trial.

*Reversed and remanded.*

Hudgins, J., concurring:

I concur in the conclusion of the majority of my associates, but reached that conclusion by a different line of reasoning.

(1) The three pedestrians, at the time of the accident, were standing close to the side of a bridge twenty feet wide. The only vehicle in sight, approaching from either direction, was this truck loaded with lumber. The pedestrians were looking at the approaching truck and the driver evidently saw them. He turned his truck towards the center of the highway and bridge and in passing the pedestrians left a four to eight-foot space between the truck and them. Under these circumstances, the mere fact that plaintiff had crossed from the left to the right-hand side of the bridge and was standing there talking to pedestrians going in the opposite direction did not make him guilty of contributory negligence.

(2) I do not think that there was sufficient evidence to submit the question of defendant's negligence to the jury unless the doctrine of *res ipsa loquitur* applies.

Plaintiff alleged two grounds of negligence:

(a) That the lumber was "negligently and carelessly packed or loaded." The evidence on the point is as follows:

"Q. How was this lumber loaded on the truck?

"A. This lumber was loaded on each side and filled out in the middle *like it is generally loaded.* (Italics supplied.)

\*     \*     \*     \*     \*     \*     \*     \*

"Q. Was it loaded to the top of the standards?

"A. It looked like to me it was. It just had a truck load. I would not say it was clean over the top of the cab, but it was packed up.

"Q. Do you know whether it was loaded to the top of the standards?

"A. No, sir; it was loaded though."

This is all the evidence introduced to support the allegation, except that a piece of lumber fell off the truck and struck plaintiff. Unless negligence is inferred from the accident itself, there is not sufficient proof of the charge to submit the question to the jury.

(b) The other ground of negligence alleged was that the truck was being driven "at a high, reckless, dangerous, excessive and unlawful rate of speed."

The vehicle involved in the accident was a one and one-half ton Chevrolet truck, equipped with pneumatic tires. The statute then in force was Code, section 2145 (7) (a), Acts 1926, ch. 474, section 6 (a), which provides:

"Motor trucks of rated capacity up to but not exceeding one and one-half tons, and equipped with pneumatic tires, may operate at the speed limits imposed by section three of this act."

Section three of the act (section 2145 (4) (a) of the Code) provides that a vehicle shall be driven "at a careful and prudent speed not greater nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and of any other conditions then existing. And any person who shall drive any vehicle upon a highway at such speed as to endanger the life, limb or property of any person, \* \* \* shall be *prima facie* guilty of reckless driving." Subject to these limitations, and others which need not be mentioned, the rate of speed is fixed at forty-five miles an hour.

(1) At the time and place of the accident no other vehicle was approaching in either direction, so the driver of the truck did not have to govern his speed by traffic. (2) The road at the point of the accident was wide, hard-surfaced and straight, hence the driver was not required to regulate his speed because of the "surface and width of the road." (3) The only "other condition then existing" was the fact that a truck, loaded with green lumber, was approaching a concrete bridge twenty feet wide, on which three men were standing close to the handrailing, on the north side of the bridge. In passing these men, the driver of the truck turned to his left, thereby leaving a space of from four to eight feet between the truck and the point where the men were standing. The "life, limb or property" of no person was endangered because of the manner in which the truck was being driven. Under such circumstances, the maximum speed fixed by the legislature for a truck equipped as, and with the carrying capacity of, the one in question is forty-five miles an hour. Unless the evidence shows that the truck was being driven at a greater speed than that named, the driver was not guilty of exceeding the speed limit. On this point the evidence was as follows:

"Q. How fast was this truck traveling at the time of this accident as best you can get at it?

"A. I think the best I can get at it, it was dropping forty to fifty miles from the hill.

"Q. Is that a straight, wide road there?

"A. Yes, sir; straight, wide road into the bridge and right through it.

"Q. There were no other automobiles or trucks on the roadway at that time?

"A. No, not at that time; not a car or nothing passed there. I looked and couldn't see no other folks—it was kind of lonesome—it shocked you. No one passed by while I was there."

On cross-examination the same witness stated that the truck was traveling "about forty or fifty miles."

John Downey, another witness who was struck by the same plank, said:

"Q. How fast was this truck running at the time it came down on the bridge and hit him?

"A. Forty or fifty miles per hour so far as I could tell—I am just guessing—he was coming."

On cross-examination Downey said:

"Q. Did he ask how fast the truck was going?

"A. He didn't ask me how fast—I said thirty or forty miles—something like that.

"Q. You told Mr. Felton or Mr. Bowen thirty to forty miles?

"A. It might not have been going that fast—I said thirty or forty miles—something like that.

"Q. When you talked with Mr. Felton and Mr. Bowen you told him it was going thirty to forty miles per hour, didn't you? And Mr. Felton said: 'You know it doesn't go that fast.'

"A. I said about thirty-five or forty miles an hour."

Another witness, Crews Hall, who did not see the accident, but saw the truck just before the impact, said:

"Q. Can you give us any idea as to the speed at which that truck was traveling when it went down the hill?

"A. Somewhere around thirty-five or forty, and it might be more than that. It was traveling down the grade and getting pretty speedy.

"Q. You would estimate it at thirty-five or forty, or probably more?

"A. Yes, sir."

Plaintiff himself testified:

"Q. How fast do you think this truck was traveling that injured you?

"A. Traveling around forty or forty-five miles an hour. At least forty miles anyhow."

None of these witnesses attempted to fix the exact speed of the truck. They frankly stated that they were guessing or estimating the rate of speed. From this evidence I cannot draw the inference that the speed of the truck at the time of the accident exceeded forty-five miles an hour.

The fact remains that plaintiff, whose action in no way contributed to the accident, was struck and seriously injured by a piece of lumber which fell from a moving truck under. the exclusive control of defendant. Ordinarily, if the lumber had been properly loaded and properly watched as the truck traveled along the highway at a proper and reasonable speed no injurious results would have followed. "The chief evidence of the true cause of the accident, whether culpable or innocent," was practically accessible to defendant, but not to plaintiff. See *Riggsby* v. *Tritton,* 143 Va. 903, 129 S. E. 493, 496, 45 A. L. R. 280.

Defendant knew, or could easily have ascertained, where and how the lumber was loaded, and what, if anything, occurred to disarrange or loosen the lumber on the truck between the place of loading and the place of the accident. This evidence was not readily accessible to plaintiff. Accidents of this nature and quality do not, in the usual course of things, happen to pedestrians on the highway when due care is exercised on the part of the operators of trucks loaded with lumber. In *Roanoke Ry. & Electric Co.* v. *Sterrett,* 108 Va. 533, 62 S. E. 385, 388, 128 Am. St. Rep. 971, 19 L. R. A. (N. S.) 316, it is said:

"The presumption of negligence suggested does not arise from the abstract fact of an accident to a passenger, but arises from a consideration of the nature and quality of the accident; and it must appear that it was such an accident as does not, in the usual course of things, happen to passengers when due care is exercised on the part of the carrier. Thompson on Negligence, vol. 3, section 3484; *Richmond Ry. & Elec. Co.* v. *Hudgins,* 100 Va. 409, 41 S. E. 736."

For these reasons, I am of opinion that the doctrine of *res ipsa loquitur* should apply to the facts and I therefore concur in the conclusion of the majority to reverse the judgment of the trial court and remand the case.