# Staunton

## J. H. ANDERSON, ADM'R, ETC. V. CLINCHFIELD RAILROAD COMPANY.

September 9, 1938.

Present, Holt, Hudgins, Gregory, Browning and Spratley, JJ.

The opinion states the case.

*S. H. & Geo. C. Sutherland,* for the plaintiff in error.

*James J. McLaughlin, Burns & Lively* and *W. L. Rush,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

The administrators of Cora Hall and Claude Mullins, who were killed at a grade crossing, brought separate actions for death by wrongful act, which were tried together, resulting in verdicts for defendant, the Clinchfield Railroad Company. Plaintiffs in the lower courts obtained these writs of error.

At the conclusion of the introduction of evidence, the trial court sustained defendant's motion to strike. This ruling constitutes the only assignment of error.

Plaintiffs contend that when a trial court eliminates all evidence from consideration by a jury, it invades the province of the jury and passes on the weight of the evidence, and is in effect a denial of plaintiffs' right to have a civil controversy settled by a jury.

Consideration of the motion does, in a measure, involve the weighing of evidence for the purpose of ascertaining whether or not a plaintiff has introduced sufficient evidence to sustain a verdict if one were based thereon. The motion to strike is the logical sequence of the abolition of the scintilla doctrine. Judge Keith, in sounding the death knell of this absurd ruling in Virginia, said in *C. & O. Ry. Co.* v. *F. W. Stock & Sons,* 104 Va. 97, 108, 51 S. E. 161, 165: "It is true that what is known as the scintilla doctrine, has heretofore prevailed in this State, by force of which courts have been required to give instructions though the evidence by which they were to be supported was such that a verdict founded upon it could not be maintained. In other words, a trial court might, under what is known as the scintilla doctrine, be reversed for failure to give an instruction which rightly propounded the law, and then be again reversed for sustaining a verdict in obedience to the instruction, because not supported by sufficient evidence. Such a doctrine does not seem consonant with reason, nor promotive of good results in the administration of justice."

The practical use of the motion is now firmly established in this jurisdiction. Its restrictions and limitations in application are fully stated in the following authorities: *Fleshman* v. *Bibb,* 118 Va. 582, 88 S. E. 64; *Green* v. *Smith,* 153 Va. 675, 151 S. E. 282; *Limbaugh* v. *Commonwealth,* 149 Va. 383, 140 S. E. 133; *Barksdale* v. *Southern Railway Co.,* 152 Va. 604, 148 S. E. 683; *Buchanan* v. *Wilson,* 159 Va. 49, 165 S. E. 422; *Catron* v. *Birchfield,* 159 Va. 60, 165 S. E. 499; *Mears* v. *Accomac Banking Co.,* 160 Va. 311, 168 S. E. 740; *Virginia E. & P. Co.* v. *Mitchell,* 159 Va. 855, 164

S. E. 800, 167 S. E. 424; *Bray* v. *Boston Lumber & Builders'*
*Corp.,* 161 Va. 686, 172 S. E. 296; *Leath* v. *Richmond, etc.,*
*Railroad Co.,* 162 Va. 705, 174 S. E. 678; *Richardson* v.
*Appalachian Electric Power Co.,* 163 Va. 394, 175 S. E. 727,
176 S. E. 471; *Ward* v. *Clark,* 163 Va. 770, 177 S. E. 212;
*Rawle* v. *McIlhenny,* 163 Va. 735, 737, 177 S. E. 214, 98 A.
L. R. 930; *Walton* v. *Walton,* 168 Va. 418, 191 S. E. 768.

The vital question presented in this record is whether
plaintiffs' evidence is sufficient to support a verdict finding
that defendant failed to give the grade-crossing signals as
required by Code, section 3958.

The general description of the scene at and near the cross-
ing may be stated thus: The railroad runs about east and
west on the south bank of McClure river, and parallel with
it. On the south side of the river and paralleling it, is a
ridge of hills, referred to in the evidence as the mountain,
which are intersected by a sharp hollow leading from the
top of the mountain down to the river. The highway runs
down this hollow, between steep, tall ridges on either side,
across the railroad and then across the river. The rail-
road track from Clinchco station, which is some 2,150 feet
east of the crossing, turns sharply to the southwest and
then turns back to the northwest, coming around the end
of the ridge standing to the east of the highway before
reaching the crossing. The passenger train was running
toward the west, while plaintiffs' intestates were in a 1930
Ford coupe driven by Clement Anderson approaching from
the south. The highway intersects the right of way just
west of the north end of this ridge at right angles. To the
right of the occupants of the car the ridge between the high-
way and the right of way prevented them from seeing an
approaching train any appreciable distance down the track
until the coupe was within fifteen to twenty feet of the
crossing. From the top of the mountain, some 300 yards,
down to the right of way, the highway descends at a steep
grade until within twenty-five to thirty feet of the rails and
then crosses the right of way on a level.

The only evidence for plaintiffs worthy of consideration as to the negligence of defendant is the testimony of Clement Anderson, the driver of the coupe. He testified that about 6 p. m. on November 8, 1937, he was driving the coupe northwardly, with Claude Mullins sitting next to him and Mrs. Hall, with a small child on her lap, occupying the right end of the seat. As he approached the crossing from the top of the mountain, he reduced the speed of the car to about five miles an hour when some twenty-five or thirty feet from the right of way. At this point he looked and listened for an approaching train, but not hearing or seeing any, he released his brakes, and when within some ten feet of the rails he saw the train coming around the curve. He was afraid to apply his brakes, as the highway was smooth and very slick, but increased his speed and tried to cross the rails ahead of the engine. He failed in this attempt. The front of the engine struck about the middle of the car and hurled it some 150 feet into McClure river. After the impact he found himself in the river some ten feet from the car, with Mrs. Hall and Claude Mullins still in it, unconscious, and with their heads under water. He managed to hold their heads out of the water until help arrived. The baby was found practically unharmed, hanging by its clothes in willows. Claude Mullins and Mrs. Hall died the next morning without regaining consciousness.

While the result of the accident is tragic, the railroad company is not liable unless its negligence caused, or concurred in causing, the collision. Clement Anderson was familiar with the conditions at the crossing, and while he said that he and his companions in the car mentioned the railway some distance before reaching it, the inference from his testimony is that he did not look and listen until he was within twenty-five or thirty feet of the crossing, at which time he heard neither the signals nor the noise of the running train.

Code, section 3958, requires the whistle to be sounded at least twice, at a distance of not less than 300 yards, nor more than 600 yards from the grade crossing. If the cross-

ing whistle was blown within this space, as nine witnesses for defendant said it was, then the operator of the train had sounded its whistle at least twice before Anderson had slowed his car down to look and listen. The gravamen of his testimony is that he did not hear either the whistle or the bell. He said that "if it had been blown close to the crossing, anyways within five or six hundred feet of the crossing, I would have been bound to hear it, it seems like. I don't see how I could fail to." He was asked, "You don't know whether you could hear the bell if it had been ringing or not with the train running?" He said, "No, sir, I don't know, but I think I would have." This is the substance of the evidence upon which plaintiffs rely.

Defendant introduced nine witnesses, four members of the crew who stated positively and emphatically both that the whistle was blown and that the bell was ringing. One, the conductor, said he was positive that the whistle signals were given, but that he did not hear the bell, though he heard it ringing at the time the train left the station and when the train was brought to a stop after the impact. Five other witnesses who lived on the north side of the river and who could see the train from the time that it left the station until the impact said the signals were sounded. Four of them were not certain as to the number of blasts sounded in the whistle, but all were positive that the bell was ringing.

These nine witnesses were in a much better position both to see the train and to hear the signals than the driver of the coupe. He was in an old model car, going down a hollow, with the window to his left partially open, but he did not know whether the window on the side next to the approaching train was down or up. The high ridge to his right obstructed sight and sound. All of his testimony may be and doubtless is true. It is still insufficient to convict defendant of failure to perform its statutory duty.

The case is controlled by the decision in *C. & O. Ry. Co.* v. *Jacobs,* 166 Va. 11, 183 S. E. 221, where authorities making the distinction between positive and negative testimony are reviewed. The following quoted excerpt

is applicable to the evidence in the case at bar (page 225) : "Substantial conflicts in testimony must be submitted to a jury, but where there is no real conflict, juries should decide questions of fact in accordance with the testimony submitted. The plaintiff has clearly failed to show by a preponderance of the evidence that defendant's servants failed to sound the requisite statutory signals, whereas the defendant has shown without substantial contradiction that these signals were given."

Giving plaintiffs the benefit of the most liberal construction of the evidence introduced by them, all that can be said is that there is a scintilla of quasi-positive evidence tending to show that the statutory signals were not sounded. But scintilla is not enough. The burden was upon plaintiffs to show by a preponderance of evidence that they were not given. This they have failed to do.

We find no error in the ruling of the trial judge, and the judgment will be affirmed.

*Affirmed.*