## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

HENRY F. DUDLEY v. PAUL W. GUTHRIE AND ROANOKE READY MIX
CONCRETE CORPORATION.

March 12, 1951.

Record No. 3749.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*Arthur E. Smith,* for the plaintiff in error.

*Woods, Rogers, Muse & Walker, Leonard G. Muse* and *John H. Thornton, Jr.,* for the defendants in error.

SPRATLEY, J., delivered the opinion of the court.

Henry F. Dudley brought this action against Paul W. Guthrie and Roanoke Ready Mix Concrete Corporation to recover damages for injuries alleged to have been caused by defendants'

negligence. The case came on to be tried, and at the termination of the taking of the evidence on behalf of all parties, the trial court sustained defendants' motion to strike out the evidence of the plaintiff.

This ruling of the trial court constitutes the only assignment of error. Appellant contends that there were sufficient inferences from the evidence to make the question of negligence an issue for the jury.

Plaintiff devotes a considerable portion of his brief to an attack upon the employment of the motion to strike out the evidence. He argues that when the trial court eliminates all the evidence from consideration by a jury, it invades the province of the jury, passes on the weight of the evidence, and, in effect, denies plaintiff's right to have a civil controversy settled by a jury. This identical question has been definitely settled in Virginia.

In *Anderson* v. *Clinchfield R. Co.*, 171 Va. 87, 198 S. E. 478, Mr. Justice Hudgins, now Chief Justice, gave full consideration to the question, and after reviewing and discussing numerous cases, said: "The practical use of the motion is now firmly established in this jurisdiction. Its restrictions and limitations in application are fully stated in the following authorities." (Citing 14 cases).

Mr. Justice Hudgins also said in *Walton* v. *Walton,* 168 Va. 418, 421, 191 S. E. 768:

"We have said in a number of cases that striking plaintiff's evidence at the conclusion of plaintiff's testimony, and thereby taking the case from the jury, is drastic and should not be done unless it is very plain that the court would be compelled to set aside a verdict for plaintiff, considering the evidence strictly as upon a demurrer thereto. When a motion to strike is made after all the evidence of both parties has been introduced, 'a somewhat more liberal rule is sometimes applied to the consideration of the evidence in passing upon the motion.' *Jones* v. *Hanbury,* 158 Va. 842, 164 S. E. 545, 546; *Bray* v. *Boston, etc., Corp.,* 161 Va. 686, 696, 172 S. E. 296."

See also Burks Pleading and Practice, 3rd Ed., section 256, page 452, *et seq.*, and note thereunder containing a history of the procedure in Virginia on a motion to strike out evidence.

The facts are without material dispute:

The plaintiff, Dudley, was a carpenter working for W. B.

Breeden, a general contractor, in the construction of a dwelling house. Together with another carpenter, he had almost completed the building of forms in which was to be poured concrete for the foundation of the house. The concrete was purchased from the Roanoke Ready Mix Concrete Corporation. The seller was to bring it to the site in its "ready mix" trucks and pour it into the forms.

Because the building lot sloped towards its back portion, the foundation form at the rear of the house was built so that it extended some distance above the ground. It was, therefore, necessary to build a ramp on which to raise the mixer trucks a sufficient height to reach a proper position to pour concrete into that form. For the purpose of constructing such a ramp, the corporation sent a number of heavy timbers to the site.

Two of the trucks of the corporation thereafter arrived at the site. Loaded with concrete each weighed approximately twenty tons. They were equipped with eight rear wheels to support their burdens. Guthrie, the driver of one of the trucks, asked the help of Breeden in the construction of the ramp. Breeden requested Dudley and another carpenter, his employee, W. T. Wood, to assist him and the two truck drivers in that work. The five men then built a ramp, with the timbers furnished by the corporation, ten to twelve feet in length with an incline of forty to forty-five degrees leading up to the back form.

When the construction had been completed, Guthrie attempted to back his truck up the ramp to a position where he could pour the concrete into the form. Two or three attempts were made to hold the truck at the top of the ramp without avail. Each time Guthrie set his brakes, but discovered that due to the slope and the weight of the loaded truck, it would not stay in proper position. Instead it slid down the ramp eighteen inches or two feet, and he then put his truck in second gear and let it roll all of the way down. In the language of Dudley: "Now, this truck went up the ramp some several times and went up and came back down; the truck was having trouble getting up on the ramp. It would go up and then come down."

During each of the attempts of the truck to get into position, Dudley and his fellow carpenter, Wood, stood seven to eight feet from its right side, with Breeden and the other driver on the left, or opposite side.

On a final attempt, when the truck was within ten or twelve

inches from the top of the ramp, Guthrie, finding that he was unable to hold his vehicle stationary in that position, called to his fellow driver, Glover, and asked him to scotch the truck on its left side. Glover says he picked up a block and hollered across the ramp, asking that the truck be scotched on its right side also. Dudley testified that Guthrie made a like request of him. Glover inserted his scotch under the left rear wheels. Dudley said he laid his scotch, a block six by eight inches in size, on the ramp, pushed it up to within twelve or fourteen inches of the right rear wheels, whereupon the truck, without warning, started down the ramp, and he moved his fingers out of the way; that the wheels struck his scotch and the block was knocked off the ramp and struck his left foot, causing the injuries complained of. Glover's scotch, however, stayed under the left rear wheels, the truck remained in position, and the load of concrete was poured. The uncontradicted evidence was that the brakes of the truck were in "perfect condition."

Dudley was an experienced carpenter, familiar with the construction of ramps, and with the process of scotching, having formerly scotched trucks himself. He testified that the ramp was built in accord with common practice, and that there was not "anything particularly unusual about this ramp as ramps go." He and Breeden described its size and shape and nothing more. Wood did not describe the ramp.

The uncontradicted evidence was that it is often necessary to raise concrete mixer trucks up by building a ramp before pouring; that the ramp involved was built in the usual way and at a height not uncommon in the business; and that the brakes on the truck were in proper working order. Although the plaintiff said that when his scotch was knocked from the ramp, the truck slipped back eighteen inches or two feet, it is not controverted that the truck stayed sufficiently close to the top of the ramp to unload its concrete.

In the plaintiff's brief he makes this argument: "Briefly stated, the question is whether, under the circumstances, defendants were negligent in constructing a ramp too steep for the safe operation of its vehicle, or whether the vehicle was not properly equipped with brakes for use on the type of ramp constructed."

We find no support for these contentions in the record. There is absolutely no evidence in the record that the ramp was too steep for the safe operation of the truck. There is ample

evidence that the brakes of the truck were in perfect working order. When they were applied the truck went into a slide.

Dudley admitted that it was perfectly plain to him the truck was having trouble both in getting up the ramp and staying at the top prior to the time he undertook to scotch it. He knew the purpose of scotching, and employed his own method. He knew he had to watch out for the wheels of the truck, because of the circumstances he had witnessed. He knew what would be likely to happen unless the chocking was effective. No warning of the driver of the truck could have told him more than he knew. There is nothing in the evidence to show that the accident occurred because of the failure of the defendants to exercise proper care. Inferences must be based on facts and not on presumptions.

The evidence leaves no ground for inference except that the injuries of the plaintiff could have been avoided by the exercise of due care on his part. All that it establishes is that Dudley was struck by the scotch, which he was attempting, by his own method, to place under the wheels of the truck. Outside of accident and injury, there is nothing to connect those facts with any negligence of the defendants as a cause. The burden was on the plaintiff to take his case beyond the realm of speculation, and into the field of fact where there could be an allowable inference. He did not do so, and on the issue presented a verdict in his favor could not have been sustained. The trial court properly sustained the defendants' motion to strike. *Green* v. *Smith,* 153 Va. 675, 151 S. E. 282; *Barnes* v. *Mabry,* 186 Va. 243, 42 S. E. (2d) 304; *Guthrie* v. *Carter,* 190 Va. 354, 57 S. E. (2d) 45.

In *Chesapeake, etc., R. Co.* v. *Heath,* 103 Va. 64, 66, 48 S. E. 508, the following statement is pertinent here:

"The party who affirms negligence must establish it by proof sufficient to satisfy reasonable and well balanced minds. The evidence must show more than a probability of a negligent act. An inference cannot be drawn from a presumption, but must be founded upon some fact legally established. This court has repeatedly held that when liability depends upon carelessness or fault of a person, or his agents, the right of recovery depends upon the same being shown by competent evidence, and it is incumbent upon such a plaintiff to furnish evidence to show how and why the accident occurred—some fact or facts by which it can be determined by the jury, and not be left entirely to con-

jecture, guess or random judgment, upon mere supposition, without a single known fact.'' (Citing cases).

In *Guthrie* v. *Carter, supra,* page 358, Mr. Justice Buchanan said:

''* * * negligence cannot be presumed from the mere happening of the accident. The burden was on the plaintiff to prove that it was due to the negligence of the defendant as a proximate cause. What is proved must establish more than a probability of negligence. Inferences must be based on facts, not on presumptions. It was incumbent on the plaintiff to show why and how the accident happened. If that is left to conjecture, guess or random judgment, the plaintiff is not entitled to recover.''

In view of the conclusion which we have reached, it is not necessary to consider an additional ground assigned and argued by the defendants in support of their motion to strike,—this is, that whatever perils might have existed, Dudley, with full knowledge of the situation and circumstances adopted his own method of procedure and assumed the risks attendant.

The judgment below is affirmed.

*Affirmed.*