## Richmond

ROGER L. MATNEY, ET AL. v. CEDAR LAND FARMS, INC., ET. AL.

April 23, 1976.

Record No. 750746.

Present, I'Anson, C.J., Harrison, Cochran, Harman, Poff and Compton, JJ.

*Donald E. Earls (Cline, McAfee, Adkins & Gillenwater, on brief),* for plaintiffs in error.

*John W. Gillespie; T. G. Shufflebarger (Gillespie, Chambers & Combs; Shufflebarger & McNeace, on brief),* for defendants in error.

COMPTON, J., delivered the opinion of the court.

This appeal arises from the trial of two consolidated cases in which a building contractor sought compensatory and punitive damages on the ground of fraud from a developer of real estate, as the result of the sale of eight lots in a residential subdivision.

In September 1972, plaintiff Roger L. Matney purchased from defendant Cedar Land Farms, Inc. two parcels of land, comprised of four lots each, in the Cedar Land Farms Subdivision in Tazewell County. Matney, a builder of "spec" homes, negotiated the purchase with defendant H. Paul Buskell, president of the defendant corporation. The evidence showed that in the construction of "spec" (speculation) homes, Matney purchased the land, obtained a construction loan sometimes using the land as collateral, built a home on the property, and sold the property using the proceeds of sale to discharge the loan.

Following Matney's inability in September 1973 to sell the home he had built on one of the parcels, these actions, in which Matney's wife joined as a party plaintiff, were filed in December 1973 alleging the defendants were guilty of "cheating and defrauding" the plaintiffs by making false representations at the time the lots were purchased. At the trial before a jury, the court below sustained defendants' motion to strike the evidence, made after all the evidence was presented, and entered summary judgment for the defendants. We granted the plantiffs a writ of error to the March 1975 final order.

The central issue is whether plaintiffs' charge of fraud has been proved by clear and convincing evidence sufficient to support a verdict in plaintiffs' favor. Ancillary to that question is plaintiffs' contention the trial court erred in certain evidentiary rulings.

On review of a case in which the trial court has sustained a motion to strike after the introduction of all the evidence, we apply

the principles governing consideration of evidence upon a motion to set aside a verdict as contrary to the evidence. *See Burks Pleading and Practice* § 284 at 514 (4th ed. 1952). "[W]e examine the evidence to determine whether or not a verdict in behalf of the losing party can be sustained. That is, upon a careful consideration of all the evidence, if we are of opinion that reasonable men may differ on the conclusion to be reached, then it is our duty to hold that the trial court committed error in striking the evidence." *Walton* v. *Walton*, 168 Va. 418, 422, 191 S.E. 768, 770 (1937). In viewing the evidence we give the plaintiffs "the benefit of all substantial conflict in the evidence, and all fair inferences that may be drawn therefrom." *Id.* 168 Va. at 423, 191 S.E. at 770. *See Dudley* v. *Guthrie*, 192 Va. 1, 3, 5, 63 S.E.2d 737, 738, 739 (1951); *Anderson* v. *Clinchfield R.R.*, 171 Va. 87, 89-90, 198 S.E. 478, 479 (1938).

The record shows that in about 1966 Buskell began to subdivide Cedar Land Farms, a tract of land containing between 600 and 700 acres. As the land was developed over the years, it was surveyed and divided piecemeal into lots which were then platted on a master map maintained in the subdivision field office. Prior to September 1972, Matney had constructed a number of houses in Cedar Land Farms on property he had purchased from Buskell which had previously been subdivided.

Matney testified that on a day in September 1972, while he was working with his brother constructing a "spec" home on property his brother had bought in the subdivision, he agreed with Buskell to purchase two contiguous parcels of eight lots adjoining the brother's property, to pay $1000 cash, and to execute two unsecured demand notes of $2500 each payable to the corporation for the remainder of the purchase price. The negotiations took place on the premises while Matney and Buskell were standing adjacent to the lots, which were each 25 feet wide by 125 feet deep and marked by visible stakes.

Thereafter, Buskell notified the subdivision surveyor of the Matney agreement. The surveyor then platted the lots on the master field office map and drafted a description of the parcels by lot, block and section number, and by metes and bounds. These alternative descriptions were transmitted by Buskell to the office of the attorney for Cedar Land Farms for preparation of two deeds. A secretary in the attorney's office asked Buskell "if it would be all right to convey by lot numbers instead of metes and bounds to expedite [our] work load." Buskell consented.

Accordingly, one deed, dated September 12, 1972, described one parcel as "being Lots Nos. 14-17, inclusive, in Block No. 3, Section No. 5"; the other deed, dated the following day, described the second parcel as "being Lots Nos. 10-13, inclusive" in the same block and section. Both deeds further described the property as

"shown and described by metes and bounds on that certain plat, entitled: 'MAP CEDAR LAND FARMS INC.', annexed to that certain deed from Cedar Land Farms, Inc., to Wayne Tester and John R. Dotson, dated 26 January, 1971, and recorded in the Office of the Clerk of the Circuit Court of Tazewell County, Virginia, in Deed Book 360, page 505, and Plat Card Nos. 2947A—2947D".

The lots sold to Matney were not shown or described on the referenced plat. These general warranty deeds were delivered, and recorded on October 30, 1972.

About a year later, Matney learned of the error when he attempted to sell the house he had constructed on lots 14-17. The prospective purchaser sought a loan and the lending institution's attorney, upon examining the title, discovered that the lots did not appear on the recorded plat mentioned in the deed and refused to certify title. Upon being advised of the problem Buskell directed his attorney to prepare deeds of correction for both parcels describing them by metes and bounds. One deed of correction was executed and delivered to Matney but never recorded; the deed for the other parcel was also executed but Matney refused to accept delivery. These suits followed.

Matney contends that plaintiffs did not acquire "good title" because the property described in the deeds "did not by description exist" on the recorded plat. Matney argues that Buskell's fraudulent conduct stemmed from an attempt to circumvent the Tazewell County Subdivision Ordinance. The ordinance, which Matney claimed applied to Cedar Land Farms Subdivision, became effective February 1, 1971. The pertinent portions of the ordinance, in essence, prohibit the sale of a lot in a subdivision to which the ordinance applies before a plat duly certified by the board of supervisors, or its designee, has been recorded. Matney also contends that Buskell knew he would attempt to reconvey the property and that defendants misrepresented to plaintiffs' detriment that the certified plat had been recorded.

Buskell denied making any fraudulent representations and, while disputing the applicability of the ordinance to this subdivision created before adoption of the ordinance, conceded that if the ordinance ap-

plied, a duly certified subdivision plat had not been filed. The defendants argue that, nonetheless, valid legal title passed to plaintiffs.

■ Turning first to the merits, plaintiffs' claim of fraud has its basis, in part, in the erroneous contention that these deeds were void for uncertainty of description. A deed description is sufficient "if it is possible, by any reasonable rules of construction, to ascertain from the description, aided by extrinsic evidence, what property it is intended to convey." *Midkiff* v. *Glass*, 139 Va. 218, 225, 123 S.E. 329, 331 (1924). The purpose of a deed description is not to identify the land, but to furnish the means of identification. *Id.* Moreover, it has been stated that a "description of land as a numbered lot or block on a certain plat is sufficiently definite, although the plat on its face furnishes no data for locating the lot or block, if with the aid of parol evidence the land can be identified." 6 G. Thompson, *Real Property* § 3052 at 611-12 (repl. vol. 1962). Here, the deeds contained a correct reference to the land conveyed by lot, block and section number. This reference, aided by available extrinsic evidence, such as the field office plat, furnished a ready means of identification of the property sold. Hence the nonexistence of the lots on the uncertified recorded plat incorporated by reference into the deeds did not prevent passage of title to the plaintiffs or, standing alone, prove fraud.

■ Nor does proof of such state of facts when taken with the other evidence establish a case of fraud and deceit sufficient to support a verdict in plaintiffs' favor. For example, there is no evidence that Matney was misled about the property he intended to purchase or that he was deeded property he did not intend to buy. Indeed, Matney admitted he was conveyed the property he bargained for, the negotiations having taken place in sight of the lots marked by visible stakes. Moreover, plaintiffs concede their ownership of the property had not been questioned. Furthermore, the record is devoid of any evidence to support a finding that Buskell represented the plat filing requirements of the subdivision ordinance had been satisfied.

Finally, defendants' bona fides is demonstrated in several ways. Buskell promptly had deeds of correction prepared when the mistake was discovered, but Matney refused to accept one deed or record the other, even though a local bank had agreed to make a $25,000 secured construction loan on that parcel upon recordation of the corrected deed. In addition, at the time of the February 1975 trial no demand for payment of the two interest-free notes for $2500 had been made

by Buskell, nor had they been negotiated, the informal agreement between Matney and Buskell at the time of execution being that payment would be made only when the homes built on the two parcels were sold. Surely, if Buskell intended to defraud Matney, he would have promptly attempted to negotiate or collect the notes.

We shall now dispose of the two evidentiary questions. First, the trial court refused to permit plaintiffs to introduce evidence relating to the alleged violation of the county ordinance and of the state land subdivision and development enabling statutes in Title 15.1, Chapter 11, Article 7 of the Code, §§ 15.1-465 to 485, and we think properly so. Code § 15.1-473, dealing with requirements for plat recordation, provides "that nothing herein contained shall be construed as preventing the recordation of the instrument by which such land is transferred or the passage of title as between the parties to the instrument." Thus it is clear that any alleged failure to comply with the subdivision plat filing requirements does not inhibit passage of title as between the parties; consequently the violation, if any, of these laws was not relevant to any of the issues in the cases since, as we have said, Buskell did not represent that the plat recording requirements had been met.

Second, the trial court permitted, over plaintiff's objection, the law partner of one of defendants' trial counsel to testify as a witness for the defendants. Plaintiffs contend this conduct by counsel violated the Virginia Code of Professional Responsibility, 215 Va. 862, and that the trial judge erred in permitting it. We disagree. During direct and redirect examination, the attorney testified that he prepared the deeds of correction, stated they contained a metes and bounds description incorporating a reference to another recorded plat, and testified concerning the execution of each deed. Copies of the deeds were admitted into evidence through the witness. Canon 5, DR 5-101 (B) (2), permits testimony from a lawyer in the firm of trial counsel "[i]f the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony." 215 Va. at 898. *See* Canon 5, EC 5-10, 215 Va. at 894. The testimony attacked here involved only formal matters and it was unlikely that substantial evidence would be offered to dispute the preparation and execution of the deeds of correction, or the content of the descriptions contained in them. Indeed, no such testimony was offered. Consequently, we think the trial court properly permitted the attorney to testify. On cross-examination, however, answers to ques-

tions on controversial subjects beyond the scope of direct examination were elicited by counsel for the Matneys, but we will not now notice any alleged error in that respect which plaintiffs invited.

For these reasons, the judgment below is

*Affirmed.*