## CIRCUIT COURT OF LOUDOUN COUNTY

Michael E. Justus et al.

v.

H. Ervin Lowell et al.

Case No. (Law) 12218

Centennial Homes, Inc.

v.

H. Ervin Lowell et al.

Case No. (Chancery) 13349

H. Ervin Lowell et al.

v.

Ken W. Erickson et al.

Case No. (Law) 13059

BY JUDGE THOMAS D. HORNE

August 17, 1992

These consolidated cases came to be heard upon the issue of the validity of the action of the Town in approving the W. W. Everett Subdivision and of the ordinance in effect at the time of such approval. Both the County of Loudoun and the Town of Purcellville were joined as parties to these proceedings prior to a determination of these issues. Based upon a review of the evidence, stipulations of the parties, and arguments of counsel, the Court finds that the Town

and the County fully complied with the statutory requirements necessary to properly modify the two-mile limit for subdivision control by the Town under the 1966 ordinance. However, the actions of the Town in subdividing the instant parcel were valid only as to so much of the parcel as lay within the one-mile limit of the Town's subdivision jurisdiction under the modification amendment 1979. Only the County might approve a subdivision request outside the limits of the Town's jurisdiction. Any attempt by either jurisdiction to exercise subdivision control beyond the limits set by the one-mile limit would be a nullity.

The requirement of the statute for inclusion in the ordinance of a map or description of the modification has been met. In this case, the description is fixed in relation to the Town boundaries. Thus, it is easily determined by reference to the Town limits. This description may be contrasted with a more elastic limit of subdivision jurisdiction within the two miles approved by statute. Such a limit might well require reference to a map or a more detailed description.

The Town of Purcellville, under their subdivision ordinance of February 8, 1966, exercised its right to subdivision control within a distance of two miles of its corporate limits. Section 15.1–467(c), Code of Virginia, as amended. In May of 1979, the Town, with the concurrence of the County of Loudoun, by mutual agreement modified the then existing two-mile limit to a one-mile limit. In order for the Town to have validly modified the existing distance into the County over which the Town might exercise subdivision control, it was required that: "[a]ny such modification shall be set forth in the respective subdivision ordinances, by map or description or both." Section 15.1–467, Code of Virginia, as amended.

There is no map contained in the amendment to the subdivision ordinance of the Town. The description is that of a limit "one (1) mile from its corporate limits . . . ." As noted earlier, such a description is sufficient to satisfy the requirements of the statute.

November 10, 1992

This cause came to be heard upon the parties' cross-motions for partial summary judgment as to Count I (breach of contract) and Count II (breach of covenants of title) of the Amended Motion for Judgment (At Law No 12218), and as to the claim for reformation set forth in the Bill of Complaint in Chancery No. 13349.

In their Amended Motion for Judgment (At Law No. 12218), plaintiffs assert that the defendants sold Lots 12-A-2, 12-A-3, 12-A-4 and 12-A-5 of the W. W. Everett subdivision to the plaintiffs pursuant to written sales contracts. The lots were platted and recorded lots, approved by the Town of Purcellville pursuant to the Town's subdivision ordinance. Title to Lot 12-A-3 was conveyed to Michael and Marsha Justus as tenants by the entireties. Title to Lots 12-A-2, 12-A-4 and 12-A-5 was conveyed to plaintiff, Centennial Homes, Inc.

This Court has heretofore determined that the Town exceeded its subdivision approval authority in applying its ordinance to that portion of the parent lot lying outside the one mile jurisdictional limit set by the Town in May of 1979. In July of 1990, plaintiffs were informed by the County of Loudoun that the subdivision application had not been properly processed by the Town and that the subdivision was a nullity. Thus, plaintiffs contend that since July of 1990, the County has forbidden the plaintiffs from taking any steps to develop, build on, or convey the lots until their "title to the lots could be regularized."

The issue raised by the instant motions involves plaintiffs' claims relating to breach of the contract and of the covenants by which the four lots were sold and conveyed to the plaintiffs.

In Count I, plaintiffs assert that the defendants breached their contractual obligation to plaintiffs to convey "good and marketable" title to the lots, and that as a direct and foreseeable result of such breach, plaintiffs sustained damage. In Count II, plaintiffs contend that they are entitled to recovery based upon the covenants contained in the deeds conveying the individual lots. Each of the four lots was conveyed with general warranty of title (§ 55–68, Code of Virginia), a covenant of defendants' right to convey (§ 55–71, Code of Virginia), and of plaintiffs' quiet possession of the property (§ 55–72, Code of Virginia). Thus, they assert they have been constructively evicted from the lots, as the lots "did not exist as a legal matter at the time they were conveyed, all in violation of such warranty and covenants."

The four contracts and deeds of conveyance have been exhibited to the Court.

In their Motion for Summary Judgment, defendants contend, *inter alia*, that the provisions of §15.1–473(c), Code of Virginia, as

amended, are particularly germane to the issue raised by Counts I and II. That Section provides:

> No person shall sell or transfer any land of a subdivision, before such plat has been duly approved and recorded as provided herein, unless such subdivision was lawfully created prior to the adoption of a subdivision ordinance applicable thereto, provided, that nothing herein contained shall be construed as preventing the recordation of the instrument by which such land is transferred or the passage of title as between the parties to the instrument.

Thus, while the provisions of § 15.1–473, place limitations on the use and development of "subdivided" land, it does not serve to limit the rights of private parties, *inter se*, to convey title or of an individual to have the instrument of conveyance admitted to record pursuant to § 55–106, Code of Virginia.

Defendants assert, as a matter of law, that the title to the property was marketable and that they breached no covenant of conveyance in the deeds transferring ownership to the Plaintiffs. In support of this contention, they draw the Court's attention to the holding of the Supreme Court in *Matney v. Cedar Land Farms*, 216 Va. 932 (1976). The Court believes their reliance on *Matney* is misplaced. *Matney* involved an action for fraud against a developer. It did not involve a claim for breach of an executory contract of sale or of a covenant contained in an executed deed of conveyance. The developer in *Matney* had identified numbered lots in a deed with reference to a recorded plat which did not show the numbered lots. The lots were however, correctly identified with reference to a plat in the office of the developer's attorney.

The plaintiff in *Matney* sought compensatory and punitive damages against the developer due to the developer "cheating and defrauding" the plaintiffs because he had not acquired good title to the lots. It was a tort case for fraud and deceit. The Court's reference to the provisions of § 15.1–473 ("that nothing herein contained shall be construed as preventing the recordation of the instrument by which such land is transferred or the passage of title as between the parties to the instrument") was in the context of the appeal of an evidentiary point raised in the trial court. That ruling involved the exclusion by the trial court of evidence relating to the alleged violation of the county subdivision ordinance and of the state land subdivision and

development enabling statutes. In sustaining the action of the trial court in excluding evidence of such a violation, the Supreme Court observed:

> It is clear that any alleged failure to comply with the subdivision plat filing requirements does not inhibit the passage of title between the parties; consequently the violation, if any, of these laws was not relevant to any of the issues in the cases since, as we have said, Buskell did not represent that the plat recording requirements had been met.

*Matney, supra*, at 937.

In the instant case, plaintiffs assert a violation of the terms of a contract of sale and of the covenants by which the parcels were conveyed. Their claim in contract relates to the manner in which individual lots were sold, contrary to law, with reference to an invalid subdivision plat.

While the opinions of the Attorney General do not have the status of binding precedent, they are useful in determining legislative intent, and in certain cases, the failure of the legislature to take corrective action subsequent to an opinion may be deemed an acquiescence in those opinions. *Browning-Ferris* v. *Commonwealth*, 225 Va. 157 (1983). Accordingly, a review of those opinions yields insight on the proper interpretation to be given the statutory exception to the prohibition against transfers of "any land of a subdivision" prior to the approval of a record plat.

The legislature has proscribed the sale or transfer of "any land of a subdivision" before the plat has been properly approved and recorded as provided by ordinance. Formerly, this legislative prohibition was delimited in terms of "reference to", "exhibition of" or "use" of a plat of a subdivision prior to its approval. Thus, the Attorney General opined in a letter to the Honorable C. Richard Cranwell that "the use of an unrecorded [subdivision] plat in the sale or transfer of land in the subdivision may be restricted [by a locality], but not the sale or transfer of the land itself." *Report of the Attorney General* (1973–74) at 253. See also, *Reports of the Attorney General* (1967–68) at 196; (1971–72) at 36; (1973–74) at 106, 267; (1974–75) at 328; (1979–1980) at 329; (1980–81) at 334; (1987–88) at 208; and (1989) at 100. While this Court would see the change in the statute since the 1974 letter opinion to be more restrictive upon the landowner's right to use an unapproved subdivision as a means to

affect a conveyance, such a determination is not controlling in this case. In either instance, such a construction of the statute lends authority to the proposition that while subdivision laws provide a vehicle by which a locality may insure the orderly subdivision of land and its development, they are not, absent enforcement, a bar to the alienation of land. Thus, compliance with the terms of the ordinance is not a prerequisite to the rights of the parties to convey, as between themselves, or to make use of the recording statutes. However, the right to convey title under the statute does not insure that such title is marketable or that the covenants of the deed of conveyance have not been violated.

This case is likewise distinguished from *Millman v. Swan*, 141 Va 312 (1925), which involved building restrictions having nothing to do with title to the property. In the instant case, the reference to the invalid subdivision plat was a statutory impediment to the marketability of title.

As has been observed by counsel, the questions of the marketability of title is one for the Court. Marketable title is:

> one which is free from liens or encumbrances; one which discloses no serious defects and is dependent for its validity upon no doubtful questions of law or fact; one which will not expose the purchaser to the hazard of litigation or embarrass him in the peaceful enjoyment of the land; one which a reasonably well informed and prudent person, acting upon business principles and with full knowledge of the facts and their legal significance, would be willing to accept with the assurance that he, in turn, could sell or mortgage the property at its fair value. (Authorities omitted.)

*Madbeth, Inc. v. Weade*, 204 Va 199, 202 (1963).

Not only is a governing body entitled to redress a violation through the use of penal sanctions under § 15.1–473(d), but it also may seek injunctive relief to abate the violation pursuant to § 15.1–499. *Report of the Attorney General*, (1987–1988) at 210. Such injunctive relief not only would pose a threat of litigation but expose the owner to a threat of "constructive eviction." To the extent that Count II addresses the covenants relative to the property conveyed, the same failure to comply with the provisions of the subdivision ordinance would serve as the basis for an asserted breach warranting relief as may be shown and is appropriate to the case.

Accordingly, the Motion of the Defendant for Partial Summary Judgment will be denied. Plaintiffs' Motion for Summary Judgment is likewise denied as there remain issues of fact which are genuinely in dispute. More particularly, the issues of what remedy is appropriate to the case and what, if any, damages are recoverable remain for determination.